CASE 76—PETITION ORDINARY—FEBRUARY 12.

# Marshall, &c., vs. Piles.

APPEAL FROM MASON CIRCUIT COURT.

1. When the terms of a written contract are ambiguous, the subject-matter and presumed object of the parties are admissible and pertinent considerations, and the words employed should, altogether, be harmonized, as far as possible, and interpreted, consistently with common sense.

2. A contract "for the sale of four hundred hogs, averaging three hundred pounds, the smallest hog not weighing less than two hundred and thirty pounds," is construed as fixing the minimum average and leaving the maximum unlimited, except by convenience and reasonable practicability; and such contract is complied with, by the vendor, by a tender of four hundred hogs, averaging three hundred and twenty pounds, at the time and place agreed upon; and, for failing to receive them, the vendees are held to be liable for the difference between the contract price and the price at which the hogs were sold, three days afterwards, in the same vicinity, and interest thereon, it appearing they were sold for their full market value.

3. An award which transcended the submission, and was repudiated by both parties, cannot afterwards be made available by one party against the other.

J. G. HICKMAN,
HARRISON TAYLOR, and
J. F. BULLITT,                                    For Appellants,

CITED—

2 *Greenleaf's Ev.*, secs. 297 *to* 302, 604.

3 *Mon.*, 153 ; 5 *Dana*, 501 ; *Kendall vs. Russell.*

1 *Smith's Leading Cases, s. p.* 307.

2 *Parsons on Contracts, p.* 158.

*Story on Contracts, sec.* 1003.

4 *Bibb*, 97 ; *Johnson vs. Butler.*

*Shepherd's Touchstone*, 164. ·

2 *M.*, 440 ; *Shackelford vs. Purket.*

1 *Mar.*, 359, 439 ; 1 *Dana*, 437.

3 *B. Mon.*, 375 ; *Hardin*, 318, 388.

1 *Bibb*, 420 ; 2 *J. J. M.*, 314.

6 *Dana*, 68 ; *M. and Lex. T. P. Road Co. vs. Waters.*

W. H. WADSWORTH and
E. C. PHISTER,                                    For Appellee,

CITED—

1 *J. J. M.*, 366 ; 2 *J. J. M.*, 520.

3 *Met.*, 129 ; 15 *B. Mon.*, 446.

2 *Greenleaf's Ev.*, secs. 78, 81, 72.

3 *Met.*, 434 ; *Denton vs. Logan.*

2 *Met.*, 139 ; *Ryan vs. Bean.*

3 *Met.*, 73 ; *Combs vs. Pond Draining Co.*

4 *Met.*, 331 ; *Buckles vs. Lambert.*

1 *Duvall*, 395 ; *Buckner vs. Bush.*

1 *Met.*, 121 ; *Overby vs. Overby.*

*Rev. Stat.*, chap. 105, sec. 6, 2 *Stant.*, 455.

JUDGE ROBERTSON DELIVERED THE OPINION OF THE COURT:

On the 17th of September, 1866, E. O. Piles, by a writ-ten contract, sold, and engaged to deliver, to M. P. Marshall, J. M. Chambers, and R. M. Marshall, at Shannon's scales, in Mason county, Kentucky, four hundred hogs of minutely described quality, "*averaging three hundred pounds, the smallest hog not weighing less than two hundred and thirty pounds,*" at the price of nine dollars a hundred, to be paid twenty days after delivery. The vendees having appointed the 20th of November, 1866, for the delivery, the parties attended on that day, at the designated place, where the vendor had more than four hundred hogs of the prescribed quality, and proposed to the

vendees to select four hundred hogs, which they declined to do, observing that they would not exact the precise average of three hundred pounds, but would require "gunshot" approximation to it. The vendor then weighed four hundred hogs, averaging about three hundred and twenty pounds; which the vendees refused to accept. The vendor, just before the tender, having bought the most of the hogs, in the neighborhood of the scales, for seven dollars, then proposed to take that price for the weight over the conventional average. This offer being also declined, the parties referred the matter to arbitrators, who awarded that the vendees should take the hogs and pay only seven dollars a hundred for the excess over the prescribed average, and that the vendor should pay them eight hundred dollars. At first the vendees agreed and the vendor refused to abide by the award. M. P. Marshall, who was managing the affair, then left for home, and the vendor sent a messenger after him to tell him that he would "stand to the award;" but Marshall, on receiving that communication, said, in substance, that it came too late, and went on. A few days afterwards the vendor sold the hogs in Maysville, for about six dollars a hundred, and sued the original vendees for damages for an alleged breach of their contract. Under instructions by the court to assess damages to the amount of the difference between the contract price and the market price, at the time and place of the tender, the jury returned a verdict for four thousand three hundred and nineteen dollars and eighty-two cents, for which the court rendered a judgment, from which the vendees appealed.

The interpretation of the effect of the contract as to the average weight is the radical and only embarrassing question in the case.

The appellants contend that three hundred and twenty pounds exceeded the conventional average too much to require them to accept the tender as made; and the appellee insists that his tender fulfilled the spirit of the contract.

It appears from the testimony that hogs of a higher average than three hundred pounds were more valuable by the hundred than hogs of the latter average; and this is urged to show that the parties intended only that the average should not be less than three hundred pounds; and this construction is rather indicated by the fact, that while the parties stipulated that no hog should weigh less than two hundred and thirty pounds, they were silent as to any excess over the average of three hundred pounds. But, without any express proof of the object of the appellants in fixing the average, this court must ascertain their purpose by considering the terms of the contract and the accompanying circumstances and presumptions.

To ascertain the intention of the parties is the only aim of interpretation; and when the terms of a written contract are ambiguous, the subject-matter and presumed object of the parties are admissible and pertinent considerations; and the words employed should altogether be harmonized as far as possible, and interpreted consistently with practical common sense.

The circuit court, by its instructions, seemed to construe the contract as to average to mean that the average should not be less, but might consistently be more, than three hundred pounds; and this court inclines to the same construction.

The hogs were apparently bought for speculative profit in the sale of the pork. At the date of the contract, the market price at the time of delivery was uncertain, and both parties expected to make a profit; and as four hun-

dred fat hogs would not weigh precisely the same on any two days, it was impossible to tender on any day an exact average of three hundred pounds; and, consequently, the parties could not have intended such an impossibility.

It is not unreasonable, therefore, to presume that each party expected a greater profit by a high than a low average, and that the higher the better for each. But it might have been difficult and even impossible to gather as many as four hundred hogs, averaging much more than three hundred pounds; and, consequently, that being a good average of a good vendible lot, and being also more easily attained than one much higher, it is reasonable to presume that these considerations led to a mutual understanding that the average should be at least three hundred pounds; and this presumption is fortified by the rather significant circumstance, that the parties stipulated that no hog should weigh less than two hundred and thirty pounds, and left an indefinite margin as to the *maximum* weight of *all* the hogs.

Interpreting the words of the contract according to the circumstances existing at the date of it, and the presumable contemplations of the parties at that time, no violence is done to the words, in a practical sense, by construing them as intended to fix the *minimum* average, and leave the *maximum* unlimited, except by convenience and reasonable practicability; and that interpretation accords most with common sense, the context, and the subject of the contract. Upon this construction none of the instructions to the jury are essentially exceptionable, and the appellee was entitled to damages.

We cannot adjudge that the amount assessed was excessive. It seems to have been compounded of the difference between nine dollars and six dollars, the sum

for which the appellee sold the hogs at *Maysville*, only three days after the tender to the appellants, and of interest on that difference; although the appellee gave seven dollars a hundred, yet the strongest evidence of the market value on the 20th of November, 1866, was the actual sale three days afterwards, and which the purchaser proves to have been about six dollars a hundred, and rather above the then market price.

And as both parties repudiated the award which transcended the submission, that abortive adjustment is. not now in the way, and cannot be made available against the judgment.

While each party seems to have acted honorably and in good faith, the law seems to us to be for the appellee.

Wherefore, the judgment is affirmed.