## Troy Carriage Sun Shade Company v. F. A. Ames Company.

(Decided November 30, 1923.)

### Appeal from Daviess Circuit Court.

1. Sales—Letter Held Not Waiver of Time Specified for Delivery.— A letter, "referring to the Bour-Davis wind shields, in view of the fact that their order has been temporarily held up, it will not be necessary for you to ship us any more by express. You will please forward them by freight until the order is completed," held not an express waiver of time specified in contract for delivery of wind shields.

2. Sales—Buyer .Held to have Waived Delay in 'Shipment Together with Right of Rescission.—Where buyer accepted shipment of wind shields in installments despite delay and urged completion of the contract by the seller, the latter was entitled to notice from purchaser that other delayed shipments would not be accepted, and purchaser could not simply await the event and refuse acceptance; delay thereby being waived together with right of rescission.

C. W. WELLS for appellant.

E. B. ANDERSON for appellee.

Opinion of the Court by Judge Clarke—Reversing.

There is no issue as to the facts in this case, which, briefly stated, are that appellant agreed in writing to deliver to appellee 102 automobile windshields, as follows: 6 about October 28, 1916, and the remainder at the rate of 3 to six per day from and after about November 10 to 15, 1916.

Six shields were delivered October 28, 3 on November 18, 6 November 20, 6 November 21, 3 December 1, 18 December 1, 18 December 7, 6 December 8, 3 December 22, 6 December 23, and 6 December 28. In all 66. These appellee accepted and paid for, but refused to accept and pay for the remaining 36 which were shipped to it by appellant as follows: 10 on January 10, 1917, 10 on January 23, 8 on January 28, 4 on January 30, and 4 on January 31.

By this action appellant sought to recover $531.00, the purchase price of the 36 shields which appellee had refused to accept. At the completion of all the evidence, both parties moved for a directed verdict, and the court sustained the motion of defendant, and dismissed the petition.

As there was no question of fact in issue on the evidence it is agreed the court did not err in directing the verdict, but it is earnestly insisted for the appellant that the court erred in not directing a verdict for it rather than for the appellee.

It is also agreed that when the contract was made the time specified for deliveries was of the essence of the contract, and that all of the shields should have been delivered by December 21, 1916, even at the minimum rate per day for delivery. It is therefore apparent that appellant, by failing to make delivery as agreed, breached

its contract, and it is conceded by counsel that this breach by it, if timely acted upon by appellee, would have excused the latter from further performance of its obligations thereunder.

The whole question then is, whether or not appellee waived its right to deliveries in accordance with the terms of the original contract. The first contention for appellant is, that this was done expressly by a letter written to it by appellee on December 9, the body of which reads:

"Referring to the Bour-Davis wind shields, in view of the fact that their order has been temporarily held up, it will not be necessary for you to ship us any more by express. You will please forward them by freight until the order is completed."

The contract was entered into with knowledge by appellant that appellee was purchasing the wind shields for the purpose of fulfilling its contract with the Bour-Davis Automobile Company, and that the deliveries were so arranged as to enable appellee to carry out that contract; and because of this fact, in contemplation of which the contract here involved was entered into by the parties, counsel agree that the time of deliveries was of the essence of their contract.

Because of this same fact, it is insisted by the appellant that when, by the above letter, it was notified that the Bour-Davis order had been held up and that it would not be necessary to make any more shipments by express as provided in the contract, and was directed to ship by freight instead until the order was completed, it was justified in assuming, as it did, that the time specified for deliveries was no longer of the essence of the contract, and was, moreover, expressly waived. We are not able, however, to concur in this construction of the letter.

On November 18, appellee had written appellant that the Bour-Davis Company had canceled its order for 27 of the bodies in the construction of which appellant had expected to use 27 of the wind shields, and requesting appellant to cancel its order for 27 of the shields. This appellant declined to do, except upon conditions unsatisfactory to appellee, and appellee then directed appellant to go ahead and complete the order, which the latter wrote it would do "in strict accordance with your instructions."

On December 1, appellee wrote appellant complaining that it was not making deliveries according to promise, reminding it of its refusal to cancel a part of the order,

and requesting that "you please let us know quickly when you expect to complete this order." In answer to this letter, appellant replied on December 4, that it expected to be able to resume shipments of wind shields at the rate of six or better daily, and to complete the order according to that schedule in approximately ten days or two weeks. It was in response to this letter that the letter of December 9th was written, and we are unable to ascribe to it any other meaning than that, in view of appellee's promise to make all deliveries within the final time limit originally agreed upon, and the fact that the Bour-Davis Company had cancelled a part of its order, the shipments might be made by freight instead of by express, and we conclude that the contract was not otherwise expressly modified.

The next insistence of appellant is, that appellee, by its course of conduct, waived deliveries according to contract, and thereby obligated itself to accept and pay for the 36 shields delivered in January, 1917, even though not delivered according to contract.

Throughout the correspondence between the parties previous to December 21, when the contract should have been completed, appellee was insisting upon, and appellant was promising, accelerated shipments. Appellee was accepting such shipments as it could get, despite the delay, and as to such shipments it of course waived the failure upon the part of appellant to make them at the time agreed upon, but did it bind itself thereby to accept any and all other shipments until this order was filled, regardless of when appellant got ready to make them?

There was no correspondence between the parties from December 11, 1916, when appellant wrote appellee that it would be "guided in strict accordance with your instructions" until January 27, 1917, when appellee wrote appellant after refusal to accept the shipments of ten shields each on January 10 and 23.

It will thus be observed that appellee, after acceptance of delayed shipments throughout the contract period, was insisting upon performance by appellant, accepted and paid for two shipments of six shields each after the contract period, and then did nothing until on January 27 it refused to accept two shipments of ten shields each, which appellant had made in the meantime. And before appellant received notice of appellee's refusal to accept these last two shipments, it made another, on January 27,

of eight shields; and after receipt of that notice, it shipped, on January 30 and 31, four shields on each day, thus making a total of 102 shields shipped, which was the full number ordered.

Appellant was manufacturing these shields for the sole purpose of filling its contract with appellee, and the latter had been informed on November 20th, when it sought a cancellation of the order for 27 of the shields, that appellant would not agree to such a cancellation because it could not use, and would have to treat as junk, materials it had fashioned for use in manufacturing the shields.

The final question then, as we conceive it, is whether or not, under all these circumstances, appellee, notwithstanding appellant's breach of the contract, was bound to give appellant any notice that it would not accept other delayed shipments, or, could it, as it did, simply await the event and then refuse acceptance?

One of the cases relied on by appellee to support the latter proposition, and which is illustrative of the other cases cited, is Standard Scale and Supply Co. v. Baltimore Enamel Company, a Maryland case reported and annotated in 9 A. L. R. 1502. The plaintiff had agreed to deliver to the defendant, within six weeks, 100 trucks. No deliveries were made within that time. Several weeks later, the defendant wrote inquiring when shipments would be made. This was October 22, 1917. Fifty trucks were shipped in January, 1918, and the purchaser was advised the remainder would follow at an early date. The defendant accepted and paid for them, and then on May 18th, no further shipments having been made, it countermanded the order. Notwithstanding this, plaintiff later shipped the balance of the order, which the defendant refused to accept, and it was held plaintiff could not recover therefor.

But obviously that case is essentially different from this one in that the defendant there gave timely notice of its election to rescind the contract. This is true in each of the other cases relied upon by appellee, where otherwise the prior course of conduct was such as might reasonably have led the seller to believe prompt deliveries would not be insisted upon.

Appellee's conduct in the case at bar, up until its acceptance of the shipment of December 28th, certainly indicated a waiver of the exact time specified for deliv-

eries, since they had never been made as agreed after the initial shipments. Notwithstanding this breach by appellant, and the failure of the Bour-Davis Company to comply with its contract, appellee not only accepted delayed shipments as made, but was urging completion of the contract by appellant.

As is said in 24 R. C. L. 277:

"There seems to be no question arising out of contracts of sale on which the authorities are in more hopeless discord than that involving the right of one party to a contract providing for the delivery of the commodity sold in installments and payment therefor as delivered, to rescind or treat the contract at an end for a default of the other party with respect to one installment."

The different rules on the subject are then stated, the majority view being that for such a default by the seller the buyer may declare the contract at an end and refuse to take further installments. But he need not do this. He has the election either to terminate or continue the contract, and if he elects to do the former, he must apprise the other party promptly or he waives that right. The rule and the reasons therefor are thus stated on page 284 of the same volume:

"Though the right of one party to terminate the contract for a default of the other party is recognized, still he has the right to treat the contract as continuing, the right to terminate being given for his benefit; and it seems to be generally recognized that if he wishes to exercise this right he must give seasonable notice of his election to do so to the party in default, else he will be deemed to have waived his right of termination on account of such past breaches. And the federal supreme court, though holding under the circumstances that the buyer was justified in terminating the contract for the default of the seller, expressly attached the proviso that the right must be distinctly and seasonably asserted."

Among the cases cited in support of this text is the case of Norrington v. Wright, 115 U. S. 188, 29 Law Ed. 920, which is one of those like the Standard Scales and Safe Company v. Baltimore Enamel Company, *supra,* upon which appellee relies, but which, as we have seen, do not apply to this case, since appellee gave no notice whatever of an election to rescind until after appellant had completed and shipped to it all the shields manufactured especially for appellee.

We therefore conclude that appellee waived the delay in shipment, together with its right of rescission, and that the court erred in not directing a verdict for appellant.

Wherefore, the judgment is reversed, and the cause remanded for further proceedings consistent herewith.