## T. L. Malone & Company v. S. H. Stone & Company.

(Decided May 11, 1926.)

### Appeal from Jefferson Circuit Court.

1. Sales—Buyer May Cancel Contract for Seller's Failure to Deliver in Time and Recover Damages Sustained up to Such Time, or Insist on Future Performance and Recover Damages Sustained by Delay.—Where seller breached contract by failure to deliver installment of cotton fabric, buyer could cancel contract by promptly notifying seller of disaffirmance and recover damages sustained up to such time, or could waive delay in delivery and insist on future performance and recover damages sustained by delay.

2. Sales—Buyer May Retain Article and Cancel Remainder of Order where Defect is in Quality, and May Cancel Order Either on First or Subsequent Shipments if Deficient in Quantity.—Where shipment is defective in quality, buyer may retain articles and cancel remainder of order if he acts promptly, but when defect is in quantity it may be acted on either on first or subsequent shipment, if the continuing installments are deficient and buyer acts promptly.

3. Sales—Broker Purchasing Cotton, Not Advised of Location of Mills at which Delivery was to be Made, is Entitled to Reasonable Time to Elect a Remedy on Buyer's Default.—Where broker purchasing cotton for another was not advised as to name or location of mills at which delivery was to be made, he was entitled to reasonable time to ascertain whether delivery had been made as per contract before electing remedy, in event of default by seller.

4. Sales—Buyer Cannot Rely on Default in Delivering Shipment as Cause for Countermanding Future Deliveries, After Accepting Delayed Shipment.—Buyer cannot continue to insist on delivery of default shipment after due date, and also rely on such default as cause for countermanding future deliveries, especially after acceptance and payment for delayed shipment.

5. Sales—Acceptance of Delayed Shipment Waives Right to Forfeiture or Cancellation on Account of Delay.—Insistence by buyer on delivery of delayed installment, together with its acceptance and payment after due date, constitutes waiver of right of forfeiture or cancellation of contract for such default.

6. Sales—Evidence Held to Show Insistence on Delivery of Delayed Installment up to its Receipt and Acceptance of Other Installments. Waiving Right to Cancellation.—In action for breach of contract to buy cotton fabric, evidence held to show that buyer insisted on delivery of delayed installment up to time it was received, and that all deliveries were accepted and paid for, waiving right to cancel future deliveries.

7. Sales—Where no Issue of Fact was Presented on Only Installment in Default which was Made Basis of Cancellation of Contract, Finding for Plaintiff in Action for Breach of Contract Should have been Directed.—In action for breach of contract to buy cotton fabric, defended on ground of cancellation of future deliveries for delay in delivery of first installments, where no issue of fact was presented on only installment in default, court should have instructed finding for plaintiff as matter of law.

8. Sales.—Measure of damages for breach of contract to buy cotton fabric is difference between contract price and market value of goods countermanded at time and place of delivery.

SHACKELFORD MILLER, JR., for appellants.

ED. G. KLEMM for appellees.

OPINION OF THE COURT BY JUDGE McCANDLESS—Reversing.

On January 27, 1920, S. H. Stone & Company, brokers, engaged in the business of dealing in cotton fabrics in Louisville, entered into a written contract with T. L. Malone & Company, a firm engaged in a similar business in New York city, for the sale and delivery by Malone & Company to the Axton-Fisher Tobacco Company of Louisville, Ky., 100,000 yards of cotton cloth at the price of 21c a yard, at the rate of 25,000 yards monthly, beginning in April at the mill. The Axton-Fisher Tobacco Company, a tobacco manufacturer, also manufactures small bags in which its tobacco is packed, and these goods were intended for that purpose. During the months of March and April the Axton-Fisher Company ran short of material and at its suggestion Stone & Company wired and mailed numerous messages to Malone & Company urgently requesting an immediate delivery of some of the goods. Malone & Company took the matter up with the mill with which they had placed the order but

were unable to secure delivery of any material during those months. Continuing along the same line, on May 4th Stone & Company wrote:

"May 4th, 1920.

"T. L. Malone & Company,
New York, N. Y.

"Gentlemen:

"We have written you several times during the past month endeavoring to get shipment on our order No. 4274 as our customer has been in very great need of these goods for some time past. However, we could never get any very definite information as to shipments. Now that the first shipment of this order is past due our customer demands that we inform them when they can expect shipment and we in turn will ask you to get this information for us just as soon as possible. A small shipment will be appreciated if it is impossible to get out the entire 25,000 yards.

"Thanking you for your efforts in this matter,
"Yours very truly,
"S. H. Stone & Company."

This letter was not answered, and on the 13th of May they wired:

"May 13th, 1920.

"T. L. Malone & Company,
350 Broadway,
New York, N. Y.

"Must have definite information order forty-two seventy-four by return wire.
"S. H. Stone & Company."

On May 14th Malone & Company wired:

"S. H. Stone & Co.,
Louisville, Ky.

"Telegram sent you invoice yesterday fifty-seven thousand yards.
"T. L. Malone & Company."

In accordance with this telegram invoice was sent for (21 bales) 57,265 yards, embracing all of April and May installments and an advance of 7,265 yards on June shipment. This was received by Axton-Fisher about

May 27th, and on the 25th a second invoice of seven bales of 17,550 yards was mailed to Stone & Company covering the remainder of the June installment. In the meantime and following that date the correspondence continued thus:

"May 14th, 1920

"T. L. Malone & Company,
    New York, N. Y.

"Gentlemen:

"We are in receipt of your telegram of May 14th and are glad to note that you are forwarding us invoice for 57,000 yards. Customer has been after us strong on these goods and we are glad to hear they are on the way.

"S. H. STONE & COMPANY."

And again on the 19th:

"May 19th, 1920.

"T. L. Malone & Company,
    New York, N. Y.

"Gentlemen:

"We are in receipt of invoice covering shipment made on order No. 4274, but have not as yet received bill of lading and wish that you would see that this is forwarded to us at once as we desire to trace this shipment. We presume these goods have been shipped as the invoice did not state they were billed and held at the mill.

"Yours very truly,
"S. H. STONE & COMPANY."

This was followed on the 21st by the following wire:

"May 21, 1920.

"T. L. Malone & Company,
    New York, N. Y.

"Gentlemen:

"Bill of lading order forty-two seventy-four not received. No embargo on. Will have trouble with customer unless bill of lading forwarded immediately.

"S. H. STONE & COMPANY."

To which Malone & Company responded by wire and letter reading as follows:

"May 21, 1920.

"S. H. Stone & Company,
        Louisville, Ky.

"Telegram mailing bill of lading today.

"T. L. MALONE & COMPANY."

"May 21, 1920.

"S. H. Stone & Company,
        Louisville, Ky.

"Gentlemen:

"We have your favor of the 19th inst., and are pleased to enclose herewith bill of lading covering 21 bales of 38½" 60/48 6.25 plain sheets shipped on May 15th to the Axton-Fisher Tobacco Company, Louisville, Ky.

"You will note that B/L reads, 'Avton-Fisher Tobacco Co.,' which we presume is a typographical error.

"Yours very truly, ·
"T. L. MALONE & COMPANY."

On May 28th Stone wired Malone as follows:

"May 28, 1920.

"T. L. Malone & Company,
        New York, N. Y.

"Hold up shipment order forty-two seventy-four. Writing.

"S. H. STONE & COMPANY."

and wrote:

"May 28th, 1920.

"T. L. Malone & Company,
        New York, N. Y.

"Gentlemen:

"We have just received invoice for seven bales of order No. 4272, but cannot use goods booked for June delivery at this time. We thought possibly these goods had not left the mill as yet and took the liberty of wiring them according to the enclosed confirmation, in the hopes that we might save all concerned some trouble.

"Yours truly,
"S. H. STONE & COMPANY."

This was followed by a letter of May 29th:

"Malone & Company,
    New York, N. Y.

"Gentlemen:

"Please cancel our order No. 4274. We have prevailed on our customer to accept shipment of May 15th, but we cannot use the remainder and we are forced to cancel.

"This material was to be used in making bags and we had to have at least a part of the first shipment on time as the mill faced closing down if there was a delay. The delay in the first shipment forced us to place a large contract for ready-made bags in order to get a small immediate shipment to tide us over, which leaves the goods being shipped on order No. 4272 a surplus.

"Your mill has shipped seven additional bales on this order which covers deliveries up through June. It seemed impossible for the mill to get us out a very small shipment when we were in very urgent need and now they are in a position to get us out three-fourths of the entire order within ten days.

                    "Very truly,
                "S. H. STONE & COMPANY."

And again on June 1st as follows:

"T. L. Malone & Company,
    New York, N. Y.

"Gentlemen:

"Under date of May 28th we received an invoice from you for seven additional bales on order No. 4274 for the Axton-Fisher Tobacco Company. On that date we took the liberty of wiring the Entwistle Mfg. Co. to recall this shipment, but it seems these people have no record of such shipment, so they advise us under date of May 29th. We wrote you to this effect on May 29th and are in hopes that you have been able to get this shipment back to your mill, wherever it may come from.

"The Axton-Fisher people were very patient about this order and, frankly, we see no way we can prevent their cancellation of same. If you will remember, we requested you to make shipment of a

single bale or two by express so as to relieve their immediate wants, but this you were unable to do. Axton-Fisher faced a proposition of either closing down their plant or going out in the market and buying the manufactured bags, which they had to do— these bags being used as you probably know for tobacco sacks.

"They have agreed to accept this first shipment of 21 bales but the second shipment of, namely, 7 bales, they have declined and will decline further shipment of this order. We regret cancellation at any time under any circumstances but we must admit that in this case we believe our customer is more than justified. Please let us have an expression of your views on this subject.

"Very truly yours,
"S. H. STONE & COMPANY."

Following this, Stone & Company paid for the 57,265 yards shipped under the first invoice, but positively countermanded the remainder of the order and no new goods were shipped. It appears that the market for these goods fluctuated greatly, advancing for several months after the contract was made and later declining violently, and after the expiration of the contract period Malone & Company sold the remaining goods for $4,066.00 less than the contract price and sued Stone & Company for this sum. The case was tried at law and a verdict and judgment rendered for defendant. Plaintiff appeals.

The agreement of the parties did not constitute four separate contracts, but a single contract for 100,000 yards of material to be delivered 25,000 yards monthly, beginning in April at the mill, and plaintiffs had the entire month in which an installment was due to make such delivery. Upon their failure to make a delivery in April they breached the contract. For this breach two remedies existed in favor of defendants: (1) They could cancel the contract by promptly notifying the plaintiff of its disaffirmance and in suit recover such damages as they had sustained up to that time, or they could waive the delay in delivery and insist upon the future performance of the contract and also recover such damages as they had sustained by the delay. Newton v. Bayless Fruit Co., 155 Ky. 440; Ten Broeck Tire Co. v. Rubber Trading Co., 186 Ky. 526; Troy Carriage & Sunshade Co. v. F. A. Ames & Company, 201 Ky. 193; W. R. Willett Lumber Company v. Lloyd Lumber Company, 203 Ky. 397.

Where the objection to a particular shipment is defect in quality, as this cannot be ascertained until after an inspection of the article, the buyer may then retain the article and cancel the remainder of the order if he acts promptly and without delay. When the defect is in quantity it may be acted upon either upon the first or a subsequent shipment if the continuing installments are deficient in this respect. It requires no inspection, however, to learn of a failure to deliver and in this class of cases each monthly shipment would stand on its own footing, and the buyer who desires cancellation of future shipments for a breach of this should act promptly upon learning of the failure, and in that respect this case is to be distinguished from those involving a defect in quality, which cannot be ascertained until after inspection, or defect in quantity which is not learned until after receipt of invoice. True, plaintiffs were not advised as to the name or location of the mills at which delivery was to be made and of course could not tell at the close of April 30th whether such delivery had been made and were entitled to a reasonable time to ascertain what had been done before electing which remedy they would pursue in the event of default. Under some conditions they might have accepted this shipment if subsequently made and still have canceled the remainder of the order by prompt action, but they could not continue to insist upon the delivery of the default shipment after its due date, and also rely upon such default as a cause for countermanding future deliveries; certainly they could not do this after such insistence and the acceptance and payment of the belated installment. Such conduct indicated an intention to fully perform the terms of the contract and constitutes a waiver of the right to forfeiture, or cancellation on account of this default.

The correspondence shows without contradiction that they did so insist on such delivery up to the time it was received; that it was then accepted as was the May installment and the advance of the June installment, and payment made for all. As there was no default except in the April shipment, and as there was no issue of fact on this question, the court should as a matter of law have instructed the jury to find for the plaintiff. The measure of damages should have been fixed at the difference between the contract price and the market value of the goods countermanded at the time and place of delivery, that is, 17,550 yards as of date June 30th, and 25,000

yards as of date July 31. If defendant shows any damages on his counterclaim for breach of warranty arising out of failure to deliver the April installment on time, this question should be submitted.

As the ruling of the trial court failed to conform to these views, the judgment is reversed and cause remanded for proceedings consistent with this opinion.