## Newton v. Bayless Fruit Company.

(Decided October 22, 1913).

## Appeal from Fayette Circuit Court.

1.   Sales—Contracts—Offer and Acceptance.—Where a broker pro-
cured a written memorandum of sale of five carloads of oranges
wherein it was provided, "all sales subject to confirmation," ship-
ment by the vendor to the vendee of two car loads of oranges on
the dates stipulated in the writing constitutes an acceptance by the
vendor of the offer of the vendee to buy, expressed in such writing,
and creates a binding contract.

2.   Sales—Rescission by Buyer—Defects as to Quantity and Quality.
—In an entire contract for successive deliveries of goods sold of
specified description and quality, a defect in quantity or quality
of the goods in the earlier deliveries, or any of them, constitutes
such a breach of the contract on the part of the vendor as will
relieve the vendee from liability for subsequent deliveries, pro-
vided prompt notice of refusal to perform is given by the latter;
or he may permit its performance by the vendor to proceed and
rely upon his damages for the breach.

3.   Sales—Remedies of Seller—Action—Damages.—Where plaintiff
contracts to sell a specified number of car loads of merchantable
oranges, free on board cars at a designated place, at a stipulated
price, and he is wrongfully prevented by the vendee from deliver-
ing same, the measure of damages is the difference, if any, in the
price for which the oranges, free on board of cars, if of a mer-
chantable quality, could have been sold on the market at the
place of shipment, as of the dates fixed by the contract for their
shipment, and the contract price agreed to be paid by vendee.

4.   Sales—Action—Evidence—Competency.—Evidence of defective
quality of oranges received by other purchasers from the same
vendor is incompetent, unless it be shown that they were of the
same variety, and grown, handled and shipped under similar con-
ditions or circumstances.

J. A. EDGE for appellant.

J. S. BOTTS, WALLACE MUIR for appellee.

OPINION OF THE COURT BY JUDGE SETTLE—Reversing.

This action was instituted in the court below against
appellee, the Bayless Fruit Company, a corporation of
the city of Lexington, by the appellant, A. B. Newton,
a resident of Winter Garden, Florida, to recover dam-
ages for the alleged violation, by appellee, of the follow-
ing written contract:

"LEXINGTON BROKERAGE CO., LEXINGTON,
"KY., October 12, 1907.
"MERCHANDISE BROKERS,
"COR: VINE & MILL STREETS. PHONE 498.
"Sold to Bayless Fruit Co., Lexington, Ky.,
"For account of A. B. Newton, Winter Garden, Florida.

"ALL SALES SUBJECT TO CONFIRMATON.
"Five (5) cars of Oranges, Newton's Pack at $2.05 f. o.
b., Winter Garden, Fla.,

"SHIPMENTS.

One car ............................................................December 5, 1907.
One car ............................................................December 6, 1907.
One car ............................................................December 7, 1907
One car ............................................................December 8, 1907.
One car ............................................................December 10, 1907.

"Accepted and signed by both parties to the contract.

"Seller...............................................................................
"Buyer, BAYLESS FRUIT Co.
"Broker              W. K. BAYLESS.
"Lexington Brokerage Co.
"W. T. WITHERS."

The breach of the contract alleged in the petition was that appellee failed to receive or pay for three of the five car loads of oranges mentioned therein, and in fact, prevented appellant from shipping them to it. This and the further affirmative matter of the petition was denied by the answer which in addition, interposed, in substance, the defense that the writing claimed by appellant to be a contract, was but a written offer of sale on the part of his agent, in which was reserved to him the right to confirm or reject the proposition of sale therein made; that he never gave appellee any notice of his confirmation of the proposed contract, until after it had notified him of its withdrawal from the contract and notified him not to ship to it the oranges, or any of them, and that it would not receive or pay for same. Furthermore, that appellee was induced to sign the contract in question by the representation of appellant's Lexington agent, named therein, that the oranges proposed to be sold and delivered to it under the contract, were ripe, of good quality, and in a good merchantable condition for shipment and delivery and for sale by appellee following such delivery, and that the oranges had

not then been seen or inspected by appellee as they were to be shipped from the State of Florida.

The answer also, in substance, alleged that, notwithstanding appellant's failure to notify appellee of his acceptance or confirmation of the contract, he shipped to appellee two car loads of oranges which he undertook to deliver to it at Lexington, and that the same were so green and unmerchantable that appellee refused to receive them, but finally did so under an agreement with appellant's Lexington agent that he would make a deduction of $125.00 on the two car loads, appellee paying to the latter the price of the oranges less the $125; and that, at the time of receiving the two car loads of oranges, appellee because of their unmerchantable character, by telegram, at once notified appellant that it would not receive or pay for the remaining three car loads mentioned in the contract and instructed him not to ship them.

The affirmative matter of the answer was controverted by reply. Upon the trial, the jury returned a verdict in behalf of appellee and, from the judgment entered upon that verdict, this appeal is prosecuted.

It is apparent, from the evidence of both appellant and appellee, that the former, on the 3rd and 5th of December, 1907, shipped to appellee two car loads of oranges that, in due course, reached Lexington and were received and paid for by appellee after the deduction of $125.00 in the contract price was made. It further appears from the evidence that, on the 6th or 7th of December, 1907, another car was loaded at Winter Garden, Fla., by appellant with oranges and billed to appellee at Lexington, but that they were not shipped to appellee nor delivered to it, as, before the car could be started on its journey to Lexington, appellant received from appellee the telegram notifying him that it would not receive any more oranges from him. This telegram, according to appellee's evidence, was sent immediately after the arrival in Lexington of the two car loads which, on account of the green and unmerchantable condition of the oranges, it refused to receive until there had been a deduction made in the price.

According to appellant's testimony, the car load of oranges which he loaded at Winter Garden and billed to appellee December 7, 1907, was, after the receipt of appellee's telegram, sold by him to a purchaser in North Carolina at the reduced price of $174 for the car load.

of 250 boxes. The remaining two car loads of oranges of 250 boxes each, which appellant claims appellee's telegram also prevented him from delivering to it, he sold to other parties at $1.40 per box, thereby sustaining upon these two car loads a loss of sixty-five cents per box. The total loss claimed on the three cars was $487.50, the amount sued for.

A letter written appellant by appellee before it received the two car loads of oranges at Lexington was produced by the latter upon the trial. It bears date, November 25, 1907, and reads as follows: "Owing to the stringency of the money market we are compelled to cut out two cars off our contract. Kindly cancel the one on the 5th and one on the 10th. We will try to take these cars up in January." The telegram intended to prevent the shipment of the other three car loads or oranges contracted for, which appellee sent to appellant on December 7, 1907, was also produced by appellant on the trial.

Evidence was introduced in appellee's behalf strongly conducing to prove the allegation of its answer that the two cars of oranges received at Lexington from appellant were green, and, by reason thereof and the unsoundness of many of them, unsalable; and also that appellee was thereafter able to dispose of but few of the oranges to its customers, although they had been purchased for sale during the Christmas holidays.

If it should be conceded that the writing between appellee and appellant's Lexington agent had to be accepted or confirmed by appellant before it became a binding contract, it is manifest that his acceptance of the contract was demonstrated by his shipment of the two cars of oranges, which were received by appellee in Lexington. In view of which the letter of the appellee of November 25th, although received by appellant before he shipped the two cars of oranges to Lexington, did not constitute notice to him from appellee that it would recede from the contract. The letter did not announce appellee's withdrawal from the contract, but merely requested appellant to leave off shipment of two cars that the writing provided should be delivered to appellee as of later dates, informed him that it would try to receive the two in January, and gave as a reason for cutting out the two cars, the stringency of the money market. But the telegram of December 7th, which the evidence conclusively shows was sent appellant by ap-

pellee and was received by the former on the day that the two car loads of oranges arrived at Lexington, did advise appellant that appellee declined to take the remaining three car loads of oranges, and the evidence introduced by appellee conduced to show that its reason for sending the telegram was the green and unmerchantable condition of the two car loads of oranges received. The telegram amounted to a peremptory command to appellant not to ship appellee any more oranges.

It is the law that in an entire contract for successive deliveries of goods sold, a vendor's breach in the earlier deliveries, or any of them, may relieve the vendee from liability for subsequent deliveries, if prompt notice of refusal to perform is given by the latter.

In Ronald P. McDonald v. Kansas City Nut. & Bolt Co., 8 L. R. A. (N. S.), 1110 (149 Fed. R., 360), this doctrine is recognized and ably discussed. In the opinion (by Sanborn, J.), it is said:

"Counsel insist, however, that the purchaser had the right to refuse to take the articles in the last four car loads regardless of their presumptive character, because the goods furnished by the plaintiff in its first deliveries were not in accordance with the terms of the contract, and in support of this proposition they cite Norrington v. Wright, 115 U. S., 188; King Phillip Mills v. Slater, 12 R. I., 82; Cleveland Rolling Mill v. Rhodes, 121 U. S., 255; Pope v. Allis, 115 U. S., 363; Husted v. Craig, 36 N. Y., 221; Campbell Printing Press & Mfg. Co. v. Marsh, 20 Colo., 22; Filley v. Pope, 115 U. S., 213; National Surety Co. v. Long, 60 C. C. A., 623, 125 Fed., 887, and other cases of like character. The decisions in these cases hold that, where the vendor is required by an entire contract, as in the case at bar, to make successive deliveries of the articles sold, and the first deliveries fail to comply with the terms of the agreement either in the quality or quantity of the goods or in the times or places of delivery, the vendee, by prompt notice of his refusal to further perform upon the discovery of the failure may relieve himself from liability for subsequent deliveries. This, however, is not his only remedy. He has the option, upon the discovery of the seller's default, to refuse to receive and pay for further deliveries, and thus to terminate the contract, or to permit its performance to proceed, and to rely upon his damages for the vendor's breach. But

he may not delay his exercise of this choice. Delay, vacillation, silence, or the absence of an immediate notice that he will not further perform is an election by the vendee that the performance of the contract shall proceed, and that he will rely upon his claim against the vendor for damages for the breach, and upon that claim alone, for his remedy. He is met here by the principle of estoppel—by the rule that he who by his acts or statements, or by his silence when he ought to speak out, intentionally or negligently induces another to so act that he will sustain injury by the former's denial of his acts, statements, or silence, or of their natural effect, is estopped to repudiate them. If he remains silent after he discovers the fault of the vendor, and permits him to incur the trouble and expense of the subsequent preparation and delivery of the contracted goods, he is thereby estopped from claiming a release from his obligation to receive and pay for them on account of the defects in the earlier deliveries. Immediate notice to the vendor upon the discovery of the default in the earlier deliveries, that the vendee will not further perform the contract, is an indispensable condition of the latter's release from his liability to accept and pay for subsequent deliveries which comply with the terms of the agreement. Pullman Palace Car Co. v. Metropolitan Street R. Co., 157 U. S., 94; Clark v. Wheeling Steel Works, 3 C. C. A., 600, 53 Fed., 494; German Sav. Inst. v. De La Vergne Refrigerating Mach. Co., 17 C. C. A., 34, 70 Fed., 146.''

The principle underlying the doctrine so well stated in the opinion supra was approved by us in Wiburg & Hannah Co. v. U. P. Walling & Co., 113 S. W., 832, in the following language: ''As a legal proposition, it is well settled that, when a person contracts for the delivery to him of goods or property of a certain quality and description, he may refuse to accept any part of the goods received unless all of them are in accordance with the contract.''

To the same effect are Louisville Packing Co. v. Crain, 141 Ky., 379; 9 Cyc., 635.

Without undertaking to set out herein the voluminous instructions given by the trial court or to indicate the errors contained therein, it is sufficient to say that they did not submit to the decision of the jury the real issues of fact involved, or correctly state the law of the case.

If, in point of fact, the two cars of oranges that were received by appellee from appellant were, as its evidence tended to prove, not of the quality contracted for by it, but so green or otherwise inferior as to render them unmerchantable in appellee's business, the attempted delivery of the two cars to appellee constituted a breach of the contract by appellant, which entitled appellee to terminate the contract and refuse to receive the remaining three cars of oranges contracted for, provided, upon its discovery of the unmerchantable quality of the two cars of oranges received, it promptly notified appellant thereof, and this, according to the evidence, it did. The fact that appellee received and paid for the two cars of oranges shipped it by appellant did not prevent it from exercising, by prompt notice, the option to refuse to receive the remaining three cars of oranges, if the oranges contained in the two cars received were not, in fact, of the merchantable quality contracted for; as, according to all the evidence, it complained of the unmerchantable quality of the oranges and by reason thereof did not pay for them until appellant made a deduction of $62.50 from the contract price on each car.

On the other hand, if as appellant's evidence conduced to show, the two cars of oranges received by appellee were of the merchantable quality contracted for by it, it had no legal right to terminate the contract by notifying appellant that it would not receive the other three cars of oranges contracted for, and the notice to appellant to that effect did not terminate it.

In the event of a verdict for the appellant, the measure of damages would be the difference, if any, in the price for which the three cars of oranges, if of a merchantable quality, could have been sold on the market at Winter Garden, Florida, "free on board cars" as of the 7th, 8th and 10th of December, 1907, respectively, and the prices appellee would have paid for them, according to the contract, had they been received by it at Lexington, as provided by the contract; the damages allowed not to exceed $487.50.

On another trial, the issues of fact as above defined, together with the law applicable thereto, should be submitted, by properly worded instructions, to the jury.

Appellant's complaint of the admission, by the trial court, of incompetent evidence, is well founded. The alleged incompetent evidence consisted of statements made by the witnesses, W. K. Bayless, T. C. Bayless,

M. Candioto, and William Butner, that Sistrunk, Butner, Flood and Candioto, just before or about the time of the shipment of the two cars of oranges to appellee by appellant, purchased and received from the latter oranges that were green; and unmerchantable. This testimony does not show that the oranges purchased by the persons mentioned by the witnesses were gathered from the same grove as were those received by appellee, or that they were of the same variety, or grown, handled, or shipped under similar conditions or circumstances, and in the absence of such a showing the evidence was clearly incompetent and should have been excluded.

For the reasons indicated, the judgment is reversed and cause remanded for a new trial consistent with this opinion.