## Gaines & Sea v. R. J. Reynolds Tobacco Company.

(Decided March 23, 1915.)

Appeal from Anderson Circuit Court.

1. Sales—Remedies of Seller—Actions for Breach of Executory Contract—Measure of Damages.—The measure of damages in an action for the breach of an executory contract of sale, where the goods are in esse, is the difference between the contract price and the market price at the time and place of delivery.

2. Sales—Remedies of Seller—Actions for Breach of Executory Contract of Sale—Weight and Sufficiency of Evidence.—Where in an attempted executory contract of sale the parties have not definitely fixed the price or rendered it capable of ascertainment with reasonable certainty by the terms of the contract in respect of the price, the contract is incomplete and unenforcible.

J. W. GAINES and WILLIS, TODD & BOND for appellants.

ALLEN & DUNCAN and R. F. PEAK for appellee.

OPINION OF THE COURT BY JUDGE HANNAH—Affirming in part and reversing in part.

Gaines & Sea instituted this action in the Anderson Circuit Court against the R. J. Reynolds Tobacco Company, to recover damages for the alleged breach of a contract claimed to have been made with them by T. W. Blackwell, acting for the defendant tobacco company, whereby the latter agreed to purchase from the plaintiffs, (1) a certain lot of leaf tobacco owned by the plaintiffs, and graded and bulked in the warehouse at Lawrenceburg; together with (2) another certain lot of tobacco which the plaintiffs had that day purchased on the floor of the warehouse; also (3) another certain lot of tobacco then in the warehouse which had been bid in by Blackwell, but the sale rejected by the owners; also (4) such other tobacco as plaintiffs might thereafter be able to procure; all to be received by the buyer at the close of the sale season. The evidence for plaintiff showed that the price of the first lot was fixed at fourteen cents per pound; that of the remaining lots at original cost, plus cost of handling and a "nice" or reasonable profit thereon. It was also shown by the proof for plaintiffs that plaintiffs at the time of the alleged contract knew and so stated to defendant's agent that the first lot contained 11,770 pounds; and that the second lot was thereafter found to contain 12,820

pounds; the third, 7,490 pounds; and the fourth, 5,735 pounds. The tobacco company having declined to take any of the tobacco, the plaintiffs sold it on the market at Louisville, and brought this suit for damages.

At the conclusion of the evidence for the respective parties, the court sustained the defendant's motion for a directed verdict in its favor. The plaintiffs appeal.

Because of the rule that upon a motion for a directed verdict the evidence of plaintiff is to be taken as true, we shall, for brevity's sake, treat the contract as one established.

It appears from the evidence for the plaintiffs that in shipping the tobacco to Louisville for sale on the market, the 11,770 pounds in the first lot was commingled with the remainder of the tobacco; and appellee company insists that because of the failure to show what this identical 11,770 pounds of tobacco realized in Louisville there can be no recovery as to that lot. As to the remaining lots, it is insisted that the agreement shown is so uncertain and indefinite as to be incapable of enforcement.

1. As to the first lot, the 11,770 pounds, the evidence sufficiently establishes an executory contract of sale of that lot at the price of fourteen cents per pound, and the buyer's repudiation of the contract. In such case, the measure of damages is the difference between the contract price and the market value at the time and place of delivery. Marshall v. Piles, 3 Bush, 249; Miller v. Burch, 41 S. W., 307, 19 R., 629; Singer v. Cheney, 51 S. W., 813, 21 R., 550; Sanders v. Bond, 66 S. W., 635, 23 R., 2084; Bell v. Hatfield, 121 Ky., 560, 89 S. W., 544, 28 R., 515, 2 L. R. A. (N. S.), 529; Newton v. Bayless Fruit Company, 155 Ky., 440, 159 S. W., 968.

The time of delivery, according to the contract, proved by plaintiff, was "the close of the sale season at Lawrenceburg," and Lawrenceburg was the agreed place of delivery. It seems from the evidence that there was only one sale day at Lawrenceburg after March 3, 1912, the date of the making of the contract sued on, and that sale was on March 16; that the tobacco company did not definitely repudiate the contract until March 30, 1912. The tobacco was not sold in Louisville until in May. The price it brought then and there under certain circumstances might be competent evidence, but it certainly was not necessary for the plaintiffs to show

what the 11,770 pounds of tobacco finally realized them, for that is not a factor in the measure of damages. The measure is the difference between the contract price and the market value at the agreed time and place of delivery. If the tobacco had no market value at that time at that place, then the market value at the nearest point where there was a market for it at the time of delivery agreed upon, may be shown, and that, less the cost of transportation to such point, would be the criterion. 35 Cyc., 594.

As to this 11,770 pounds of tobacco, the plaintiffs were entitled to go to the jury; and the trial court erred in directing a verdict for the defendant to that extent.

2. As to the other three lots, the price agreed upon was the original cost thereof, plus the expense of handling and a "nice" or "a reasonable profit."

A purchaser who accepts property purchased under an executory contract of sale which is silent as to the price is nevertheless liable for its reasonable value, generally the market value; and he cannot escape liability on the ground that the contract is invalid because silent as to the price of the article, for the law in such case will imply a promise to pay the reasonable worth of the property so received. 32 L. R. A. (N. S.), 429, note.

But, whether while the contract is wholly executory, it is invalid for failure to fix the price, is a question upon which there is some conflict of authority Ann. Cas. 1912 B., 359, note.

In the case at bar, however, the contract is not silent as to the price; the parties have agreed upon a method of fixing the price. But a valid executory contract of sale is not exhibited unless by their agreement they have definitely fixed the price, or have rendered it capable of ascertainment and determination with reasonable certainty. This rule is inevitable because the price is one of the factors of the measure of damages in the event of a breach of the contract, and unless the price is fixed or capable of ascertainment with reasonable certainty, a trustworthy measure of the loss occasioned by the breach cannot be demonstrated. 35 Cyc., 48.

In Hagin v. Combs, 102 Ky., 165, 19 R., 1165, 43 S. W., 222, an executory contract of sale of certain logs "at the market price" at a certain time and place, was upheld; but the "market price" of a commodity is a thing capable of ascertainment with reasonable cer-

tainty, by the practical methods of trial and judicial effort.

In the case at bar the original cost of the tobacco is capable of definite ascertainment, as is also the expense of handling; but there still remains the question of what is a "nice" or "reasonable profit" thereon.

The court will not disclaim knowledge of the universally accepted fact that the business of purchasing leaf tobacco from the grower has been one involving a considerable measure of financial risk and speculative hazard.

And what would be a reasonable profit to one who has invested his money in the commodity mentioned is an issue, the determination of which by judicial processes would necessitate inquiry into matters of such collateral nature and quality as to render it one incapable of ascertainment by the practical and permissible methods of trial.

It would involve and include an inquiry into what would constitute a reasonable and appropriate compensation for the peculiar shrewdness and energy, purely as a trader, of the person who purchased the tobacco upon sale. It would likewise involve and include the consideration of what would constitute a reasonable and suitable compensation for the skill of such person, purely as a judge of grades, qualities and values of leaf tobacco.

And it would also involve and include an inquiry into an element of reasonable profit which would be the most difficult of all to establish by practical judicial processes, and that is, the element of due return and commensurate reward for the financial hazard arising upon the investment of capital; for the question of a reasonable profit would be one to be determined as if the contract sued upon had not been made.

These inquiries are of such nature that their determination would lead so far afield, into the realm of surmise, that the processes by which their establishment might be attempted to be effected would not meet with the sanction of recognized principles of procedural law.

The court is, therefore, of the opinion that the parties by their agreement did not render the price to be paid for the last-named tobacco capable of ascertainment with reasonable certainty, and that, as to this tobacco—the second, third and fourth lots mentioned—the

contract was incomplete and unenforcible. The ruling of the circuit court was correct in respect of these items.

But because of the error of the circuit court in directing a verdict for the defendant as to the claim of appellant concerning the 11,770 pounds, that referred to as the first lot, the judgment is reversed for proceedings consistent herewith. Whole court sitting.