ROBERT N. CORTHELL *vs.* SUMMIT THREAD COMPANY.

Androscoggin.     Opinion, June 26, 1933.

*Clifford & Clifford*, for plaintiff.
*George W. Abele*,
*Verrill, Hale, Booth & Ives*, for defendant.

SITTING: PATTANGALL, C. J., DUNN, STURGIS, BARNES, THAXTER, JJ.

STURGIS, J. In this action, the plaintiff declares in special assumpsit for the breach of a written contract and adds the general money counts with specifications. The plea is the general issue. The case comes forward on report.

The Summit Thread Company, the defendant in this action and hereinafter referred to as the Company, is a cotton yarn finisher with executive offices in Boston, Massachusetts, and a mill and machine shops in East Hampton, Connecticut. It manufactures spools, bobbins and other receptacles for winding threads, as also various devices which, to stimulate and retain trade, it loans to its customers for use with its products.

Sometime prior to the spring of 1926, Robert N. Corthell, the plaintiff, then employed by the Company as a salesman, perfected and patented two bobbin case control adjuncts and a guarding attachment for thread cops, especially adapted for use in stitching machines in shoe shops, and offered to sell them to the Company. A thirty-day option, taken but not exercised, led to a conference which involved not only the purchase of these inventions, but also future patents which might be taken out by the plaintiff, his remuneration for them and his salary as a salesman. The result was that, on March 31, 1926, the contract in suit was executed. The preambulary provisions of the agreement recite the giving and the reception of the option already referred to, the plaintiff's demand for increased salary, and then read as follows:

"Whereas, the Summit Thread Company being desirous at all times to be fair and reasonable, now makes the following proposition, which was accepted by the said Corthell, in a rough form at East Hampton, Connecticut, on March 23, 1926.

That beginning on April 1, 1926, the Summit Thread Company agrees to pay R. N. Corthell a salary of $4,000 per annum, for a period of five years, which is $620 additional to Corthell's present salary and that, in event of any distribution of Profits as covered by the Memorandum of Agreement relative to the Distribution of Profits which might be coming

to the said Corthell, then the above $620 is to be deducted from whatever the amount coming to him is.

IN CONSIDERATION, of the above, Robert N. Corthell agrees to accept $3,500 from the Summit Thread Company for the three patents mentioned in this agreement, the receipt of which is acknowledged by Corthell's signature to this agreement, and

FURTHERMORE, in consideration of the increased salary to Corthell for five years and the payment of $3,500 to Corthell for the three patents, R. N. Corthell agrees that he will turn over to the Summit Thread Company, all future inventions for developments, in which case, reasonable recognition will be made to him by the Summit Thread Company, the basis and amount of recognition to rest entirely with the Summit Thread Company at all times.

ALL of the above is to be interpreted in good faith on the basis of what is reasonable and intended and not technically."

The certificate accompanying the report stipulates that the case is to be decided upon so much of the evidence as is legally admissible. The facts already stated are not in controversy. The following summary sets out the findings on other issues.

During the term of the contract, no question was raised by either party to it as to the validity or the binding effect of its several provisions. The plaintiff continued as a salesman for the Company, covering the same New England territory and particularly the shoe shop trade. Within five months after the contract was signed, he turned over a new invention for development. The Company was marketing thread on a spool or "cop" called the Summit King Spool, made up by attaching a smooth frusto-conical wooden base to a tubular fibre core. As an improvement, the plaintiff conceived the idea of grooving the head or base of the spool, making corrugations thereon which would prevent thread convolutions from dropping as they unwound. This invention was brought to the attention of the officers of the Company, data and drawings furnished and, upon application by the General Manager and through his assignment, the Company, on October 18, 1927, took out Letters Patent No. 1,646,198.

On April 27, 1927, the plaintiff filed an application on a bobbin

controlling adjunct for sewing machine shuttles. This adjunct, composed of an annular sheet metal head provided with a tube or tubular shank to fit the bore of a thread cop, had fixed to its outer surface a thin spring of resilient sheet metal and was made with the object of taking up the thrust or side play of the thread bobbins used in stitching machines in shoe factories. The plaintiff assigned this patent to the Company and on January 8, 1929, it obtained Letters Patent No. 1,698,392.

A further invention made by the plaintiff and turned over to the Company consists of a celluloid disc with a boss in the center used in Singer I. M. shuttles, so-called, to confine the bobbin ready wound with thread in the chamber, the boss acting as a hub for the bobbin to turn on, keeping it steady as the machine runs and the thread is unwound. This was also a device particularly adapted to use in shoe shops and was patented by the Company.

Finally, the plaintiff turned over for development what seems to be termed in the trade as a S. C. B. bobbin with celluloid or paper discs fastened to the tube by four ears pressed down in the center. This was made for use in all sewing machines using ready-wound bobbins. It has never been patented and its patentability is doubtful.

The plaintiff has never received any compensation for these inventions. He turned them over to the Company in accordance with the terms of his contract, and it owns them and the patents which have been issued. Prior to the expiration of the contract, the plaintiff requested "recognition," but received only assurances that he would be fixed up all right and finally that the matter of his compensation would be taken up when a new contract was made. When, on April 1, 1931, the contract expired, it was not renewed and, at the end of July, following, the plaintiff's employment was terminated.

No contention is made that the term "reasonable recognition," as used in the contract under consideration, means other than reasonable compensation or payment for such inventions as the plaintiff turned over. The point raised is that coupled with the reservation that the "basis and amount of recognition to rest entirely with" the company "at all times" leaves "reasonable recognition" to the unrestricted judgment and discretion of the Com-

pany, permitting it to pay, as it here claims the right, nothing at all for the inventions which it has received, accepted and now owns. It is contended that the vagueness and uncertainty of these provisions relating to the price to be paid renders the contract unenforcible. To this is added the claim that the inventions were worthless and the plaintiff has suffered no damage.

There is no more settled rule of law applicable to actions based on contracts than that an agreement, in order to be binding, must be sufficiently definite to enable the Court to determine its exact meaning and fix exactly the legal liability of the parties. Indefiniteness may relate to the time of performance, the price to be paid, work to be done, property to be transferred or other miscellaneous stipulations of the agreement. If the contract makes no statement as to the price to be paid, the law invokes the standard of reasonableness, and the fair value of the services or property is recoverable. If the terms of the agreement are uncertain as to price, but exclude the supposition that a reasonable price was intended, no contract can arise. And a reservation to either party of an *unlimited* right to determine the nature and extent of his performance renders his obligation too indefinite for legal enforcement, making it, as it is termed, merely illusory. *Williston on Contracts*, Vol. 1, Secs. 37 et seq. See Extended Note, 53 L. R. A., 288 et seq.; 13 C. J., 266 and cases cited.

It is accordingly held that a contract is not enforcible in which the price to be paid is indefinitely stated as the cost plus "a nice profit," *Gaines* v. *Tobacco Co.*, 163 Ky., 716, 174 S. W., 482; "a reasonable amount from the profits," *Cauet* v. *Smith*, 149 N. Y. S., 101; "a sum not exceeding $300 during each and every week," *United Press* v. *New York Press Co.*, 164 N. Y., 406, 58 N. E., 527; "a fair share of my profits," *Varney* v. *Ditmars*, 217 N. Y., 223, 111 N. E., 822, 823; and "a due allowance," *In re Vince* (1819), 2 Q. B., 478.

On the other hand, in *Brennan* v. *The Assurance Corporation*, 213 Mass., 365, the agreement of a contractor to "make it right with" a laborer who had been injured, if he was not able to resume work at the end of six weeks, was held not void for indefiniteness, the words "make it right" meaning fair compensation in money for the injuries received.

In *Silver* v. *Graves*, 210 Mass., 26, 95 N. E., 948, recovery was allowed on the defendant's promise to the plaintiffs that, if they would withdraw their appeal in the matter of the probate of a will, he would "make it right with (them) with a certain sum" and "give (them) a sum of money that would be satisfactory." The terms "right" or "satisfactory" were held there to mean what ought to satisfy a reasonable person or what was fair and just as between the parties.

In *Noble* v. *Burnett Co.*, 208 Mass., 75, 94 N. E., 289, the plaintiff's intestate agreed to produce certain formulas and to permit their use for manufacturing purposes, the contracting firm to manufacture and put upon the market compounds made in accordance with any of these formulas which they believed capable of yielding a profit and to pay the intestate "a fair and equitable share of the net profits." The contract was held to be sufficiently certain as to the price to be paid to be enforced.

In *Henderson Bridge Co.* v. *McGrath*, 130 U. S., 260, a promise to pay "what was right" was held, if made with a contractual intent, to be a promise to pay a reasonable compensation, and not too indefinite.

The views of Judge Cardozo in the dissenting opinion in *Varney* v. *Ditmars*, supra, p. 233, are instructive. He seems to be in accord with the cases last cited and to hold the opinion that, if parties manifest, through express words or by reasonable implications, an intent on the one hand to pay and on the other to accept a fair price, a promise to pay a "fair price" is not, as a matter of law, too vague for enforcement, and such damages as can be proved may be recovered.

In the instant case as in those last cited, the contract of the parties indicates that they both promised with "contractual intent," the one intending to pay and the other to accept a fair price for the inventions turned over. "Reasonable recognition" seems to have meant what was fair and just between the parties, that is, reasonable compensation. The expression is sufficiently analogous to those used in the Massachusetts and concurring cases which have been cited to permit the application of the doctrine, which they lay down, to this case. We accept it as the law of this jurisdiction.

"Reasonable recognition," as used by the parties, was, as already noted, coupled with the reservation that the "basis and amount of recognition (was) to rest entirely with" the Company "at all times." Nevertheless, the contract was "to be interpreted in good faith on the basis of what is reasonable and intended, and not technically." In these provisions, we think, the parties continued to exhibit a contractual intent and a contemplation of the payment of reasonable compensation to the plaintiff for his inventions. The Company was not free to do exactly as it chose. Its promise was not purely illusory. It was bound in good faith to determine and pay the plaintiff the reasonable value of what it accepted from him. It not appearing that it has performed its promise in this regard, it is liable in this action and the plaintiff may recover under his count in *indebitatus assumpsit*. *Bryant* v. *Flight*, 5 M. & W., 114; *Williston on Contracts*, Sec. 49.

The evidence indicates that the S. C. B. bobbin disc has no real value. It is doubtful if it is patentable and its use might expose the Company to suits for infringement of other patents. The corrugated spool head, however, effected, indirectly at least, a continuation of the Company's monopoly in the Summit King Spool, and the bobbin controlling adjunct and the bossed disc patents brought and held profitable customers in the shoe trade. The utility and value of these inventions for the stimulation and retention of trade is apparent, and why production and distribution were discontinued does not satisfactorily appear. The election of the Company to abandon their use does not measure their worth. We are of opinion that, at the time these inventions were turned over to the defendant, they had a reasonable value of $5,000 and the plaintiff should recover accordingly. The Writ was dated March 5, 1932. Interest from that date must be added. The entry is

*Judgment for the plaintiff for $5,000 and interest from the date of the Writ.*