USCA1 Opinion

 

 May 16, 1996 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 95-1818 WILLIAM J. HODGKINS, JR., Plaintiff - Appellant, v. NEW ENGLAND TELEPHONE COMPANY, Defendant - Appellee. ____________________ ERRATA SHEET The opinion of this court issued on May 7, 1996 is amended as follows: Page 6, line 13 should read "absence of evidence to support the non-moving party's position." ___ UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 95-1818 WILLIAM J. HODGKINS, JR., Plaintiff - Appellant, v. NEW ENGLAND TELEPHONE COMPANY, Defendant - Appellee. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MAINE [Hon. D. Brock Hornby, U.S. District Judge] ___________________ ____________________ Before Torruella, Chief Judge, ___________ Cyr and Stahl, Circuit Judges. ______________ _____________________ Joel C. Martin, with whom Thomas C. Bradley and Petruccelli ______________ _________________ ___________ & Martin were on brief for appellant. ________ Pamela A. Smith for appellee. _______________ ____________________ May 7, 1996 ____________________ TORRUELLA, Chief Judge. Plaintiff-appellant William J. TORRUELLA, Chief Judge. ___________ Hodgkins ("Hodgkins") sued his former employer, defendant- appellee New England Telephone and Telegraph Company ("NET"), because he believes that NET paid him an insufficient amount for a cost-saving idea he submitted in its employee suggestion program. The district court granted NET's motion for summary judgment on Hodgkins' claims, which include breach of contract, quantum meruit, equitable estoppel, unjust enrichment, and negligent misrepresentation. Hodgkins appeals the district court's decision. We reverse in part, affirm in part, and remand for further proceedings. BACKGROUND BACKGROUND __________ Because the district court granted summary judgment in favor of the defendant, we recite the facts in the light most favorable to the plaintiff's claims, giving him the benefit of all reasonably supported inferences. NET has an employee suggestion program named "Ideas at Work" ("the IAW program"), that encourages and rewards employee ideas that produce savings or increased profits for NET. According to NET's "Suggester's Guide," reviewed by Hodgkins before he submitted his idea, the IAW program "rewards the people who come up with ideas the company uses by paying the originators fifteen percent of the savings or earnings from the first year of implementation--up to a limit of $50,000." The IAW program provides for "Initial Awards" of 15 percent (minimum of $75 and maximum of $5,000) of the estimated net savings or profits for -2- one year on so-called "tangible ideas," and "Special Merit Awards" of up to 15% of the actual savings or profits produced by the idea in its first year of implementation. According to an IAW program handbook that NET supplied to its employees, "[a]ll tangible ideas which were awarded an initial award will be re- evaluated one year from the date of implementation to determine the actual savings or profits." William Hodgkins, Jr. was employed by NET in Maine from 1956 until February 1992. Hodgkins produced an idea that would reduce the cost of changing telephone service for certain multisubscribers such as dormitories and nursing homes. On April 20, 1989, Hodgkins submitted his idea to the IAW program. Hodgkins conducted his own study, and based on his own managerial expertise, concluded that the idea would save NET money, and that therefore NET would implement the idea, evaluate it under the IAW program, and grant him fifteen percent of the first year's savings. Based on his own knowledge of NET's operations and costs, Hodgkins expected that he would receive the maximum under the IAW program, $50,000. Hodgkins submitted his idea to the IAW program by signing a submission form in which he agreed to abide by the rules of the program as laid out on the reverse side of the form and in a NET document called General Administrative Procedure No. 53 ("GAP 53"). Both the back of the submission form and GAP 53 specified that NET had the sole, exclusive, and complete discretion and right to determine the terms, policy, -3- structure, operation and administration of the Program, including the right: . . . .  e) To determine the method for calculating the amount of any award.  f) To determine the amount of any award granted. g) To determine the person entitled to receive any award. h) To determine the extent, if any, of the application, implementation, or use of an idea. The same documents also provided that "[t]he decisions of the Company concerning the terms, policy, structure, operation or administration of the Program are within the sole and exclusive discretion of the Company and are final, binding, and conclusive." In August 1990, NET's initial evaluation reported that Hodgkins' suggestion was "an excellent idea to move the company forward in its goal of automated provisioning." As a result, he received the maximum Initial Award of $5,000 in September 1990. In January 1991, NET announced in its weekly in-house publication that Hodgkins' idea had been adopted and that it "earned for its suggester a Tangible Award of 15 percent of its estimated savings." NET implemented Hodgkins' idea in July 1991, and thus no determination of the first-year savings for a Special Merit Award could be made until after July 1992.  Expecting to receive the maximum award for his idea, Hodgkins retired from NET in February 1992, earlier than he would have retired had he not expected the award. In September 1992, -4- NET manager Philip DuBois informed Hodgkins by telephone that NET had awarded him $17,500 for his idea.1 Hodgkins told DuBois that the amount of the award was too low. DuBois then sent the evaluation form back to the IAW program manager for re- evaluation. In August 1993, NET informed Hodgkins that he would not receive a Special Merit Award. According to NET's re-evaluation report, NET could not quantify savings associated exclusively with Hodgkins' idea because other innovations had produced the same results as Hodgkins' idea. Hodgkins appealed this decision, and a second re-evaluation was performed, which arrived at the same conclusion. NET's evaluation reports indicated that the task of measuring savings had been rendered impossible by the destruction of cost records, given the passage of time. As a result, NET has not awarded Hodgkins any money beyond the $5,000 Initial Award. Because Hodgkins did not receive the total amount he expected, his financial plans for retirement have been disturbed, causing him to draw prematurely on certain investments and incur early withdrawal penalties. On theories of breach of contract, quantum meruit, unjust enrichment, equitable estoppel and negligent misrepresentation, Hodgkins brought suit in district court seeking damages incurred in reliance on statements made by NET, as well as the additional $45,000 of award money he expected, plus money for income taxes,  ____________________ 1 NET contests this assertion. -5- which NET had agreed to pay on any IAW program award amount. The district court granted summary judgment on all counts. STANDARD OF REVIEW STANDARD OF REVIEW __________________ We review a district court's grant of summary judgment de novo, viewing the facts in the light most favorable to the __ ____ nonmovant, Hodgkins. Dominique v. Weld, 73 F.3d 1156, 1158 (1st _________ ____ Cir. 1996); Coyne v. Taber Partners I, 53 F.3d 454, 457 (1st Cir. _____ ________________ 1995). Summary judgment is appropriate when, based upon the pleadings, affidavits, and depositions, "there is no genuine issue as to any material fact, and [where] the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Hope Furnace Assocs., Inc. v. F.D.I.C., 71 F.3d 39, 42 (1st Cir. __________________________ ________ 1995); Grenier v. Cyanamid Plastics, Inc., 70 F.3d 667, 671 (1st _______ _______________________ Cir. 1995). To succeed, the "moving party must show that there is an absence of evidence to support the non-moving party's position." Hope Furnace Assocs., 71 F.3d at 42 (quoting Rogers _____________________ ______ v. Fair, 902 F.2d 140, 143 (1st Cir. 1990)). "An issue is only ____ 'genuine' if there is sufficient evidence to permit a reasonable jury to resolve the point in the nonmoving party's favor." Id. ___ at 42-43 (quoting NASCO, Inc. v. Public Storage, Inc., 29 F.3d ___________ _____________________ 28, 32 (1st Cir. 1994)).  DISCUSSION DISCUSSION __________ On appeal, Hodgkins argues that the evidence sufficed to raise genuine issues of material fact as to whether he and NET formed an enforceable contract, and whether NET breached it. -6- Alternatively, in the absence of an enforceable contract, Hodgkins claims that he is entitled to a trial on a theory of unjust enrichment or quantum meruit. Hodgkins also advances claims under theories of equitable estoppel and promissory estoppel. Finally, Hodgkins claims that the evidence requires that a factfinder decide whether NET negligently misrepresented to Hodgkins that he was entitled to additional compensation. I. Breach of Contract I. Breach of Contract The district court decided that the IAW program formed part of Hodgkins' contract of employment with NET. The district court also found that the provision of the IAW program that states that "[a]ll ideas which result in Initial Awards for tangible ideas shall receive consideration for a Special Merit Award" was "clearly enforceable." However, the district court found crucial the IAW program's express condition that NET had "the sole, exclusive, and complete discretion and right to determine the terms, policy, structure, operation and administration of the Program." The district court pointed to the IAW program Submission Form, which along with allocating such discretion to NET, provides that NET has the right "to determine the method for evaluating ideas which are submitted" and "to determine the method for calculating the amount of any award to be granted." As a result, the district court found an enforceable contract -- one which it found NET did not breach. On appeal, Hodgkins argues that the IAW program is severable from his employment contract, and that by accepting his -7- submission and implementing his idea, NET was bound to pay him if it was successful. Hodgkins also contends that while there was no explicit reasonableness requirement in Hodgkins' contract with NET, other terms in the contract substitute for it. Under this reading of the contract, Hodgkins asserts that a genuine issue of material fact persisted with respect to whether NET breached the contract. Hodgkins argues that, in the event that NET's reserved discretion was so broad as to encompass its actions, such discretion must have been too broad for the district court to find an enforceable agreement. The district court's key finding was that NET and Hodgkins formed an agreement that remained enforceable despite the clause granting NET "sole, exclusive, and complete discretion" over the IAW program's operation, including authority "to determine the method for calculating the amount of any award to be granted." According to the district court, the latitude this provision afforded NET was sufficiently wide to encompass NET's conduct in evaluating Hodgkins' idea. Therefore, the district court concluded, there was no breach. Hodgkins contends that the district court's analysis must be erroneous. According to Hodgkins, the district court's reading of the clause granting NET discretion is so generous to NET that it must lead to the conclusion that Hodgkins received no consideration or enforceable promise in return for submitting his idea, since NET had the unbridled discretion to vary the contract at will. See, e.g., Whitten v. Greeley-Shaw, 520 A.2d 1307, 1309 ___ ____ _______ ____________ -8- (Me. 1987) (noting that "[e]very contract requires 'consideration' to support it"); Corthell v. Summit Thread Co., ________ _________________ 167 A. 79, 81 (Me. 1933) (stating that "a reservation to either party of an unlimited right to determine the nature and extent of his performance renders his obligation too indefinite for legal enforcement, making it, as it is termed, merely illusory"). In considering this argument, we agree with the district court and the parties that Maine law applies. See ___ Moores v. Greenberg, 834 F.2d 1105, 1107 n.2 (1st Cir. 1987) ______ _________ (stating that "[w]here the parties agree what substantive law controls in a diversity case, we can -- and ordinarily should -- accept such a concession."). Under Maine law, the paramount principle in the construction of contracts is to give effect to the intention of the parties as gathered from the language of the agreement viewed in the light of all the circumstances under which it was made . . . . Such intention must be gathered from the written instrument, construed in respect to the subject matter, the motive and purpose of making the agreement, and the object to be accomplished. Baybutt Constr. Corp. v. Commercial Union Ins., Co., 455 A.2d ______________________ ___________________________ 914, 919 (Me. 1983), cited in Top of the Track Assocs. v. _________ ___________________________ Lewiston Raceways, Inc., 654 A.2d 1293, 1295-96 (Me. 1995). _______________________ The district court's reading of the written instrument's literal terms is not disputed. The IAW program form submitted by Hodgkins clearly reserves calculation and determination of awards to NET's discretion, and Hodgkins does not argue that he was not aware of these provisions. In the -9- absence of any evidence proffered by Hodgkins that NET engaged in bad faith acts such as intentionally destroying records, we agree with the district court's finding that NET's conduct, including its repeated evaluations of Hodgkins' ideas, falls within the ambit of its "sole, exclusive, and complete discretion" over the IAW program's operation. However, a question lingers regarding Hodgkins' argument that the discretion reserved by NET was so "unlimited" as to void the agreement. See Corthell, 167 A. at 81 (noting ___ ________ that a party's reservation of an unlimited right to determine the _________ nature and extent of its performance renders its obligation too indefinite for legal enforcement). In Corthell, 167 A. at 81, ________ the Maine Law Court confronted facts bearing some resemblance to those of the instant case. In that case, the plaintiff Corthell executed an agreement with his employer whereby he would be compensated for "all future inventions" with "reasonable recognition," "the basis and amount [of which] to rest with" the employer "at all times." Id. Despite the reservation of ___ discretion to the employer, the Maine Law Court held that the employer's promise was not illusory and that the contract was valid. Id. at 82. Stating that the contract "was to be ___ interpreted in good faith on the basis of what is reasonable and intended, and not technically," and also emphasizing that the contract contained specific language instructing that it should be construed in that manner, the court found that the employer's promise was not illusory based on the provision for "reasonable -10- recognition" and the parties' exhibition of a contractual intent. Id. (finding a valid enforceable agreement and also concluding ___ that the employer breached it). Citing Corthell, Hodgkins argues that because the IAW ________ program agreement did not include any mention of "reasonable recognition," as the agreement in Corthell did, the IAW program ________ agreement reserved excessive discretion for NET and was thus void. We do not agree. See Brooking v. Maine Employment Sec. ___ ________ _____________________ Comm'n, 449 A.2d 1116, 1118 (Me. 1982) (noting that it was ______ "highly unlikely" that an employment agreement would have been unenforceable for vagueness even though compensation for services was not stated, and failing to note any provision requiring a reasonable amount) (citing Corthell, 167 A. at 81). We cannot ________ therefore accept Hodgkins' semantic emphasis based on Corthell. ________ See Towne v. Larson, 51 A.2d 51, 53 (Me. 1947) (noting that while ___ _____ ______ "it is true that a contract must be sufficiently definite to enable the court to determine its meaning and fix the legal liability of the parties . . . [t]he court looks to substance rather than to form, and is reluctant to construe a contract so as to render it unenforceable if that result can be avoided") (discussing Corthell). ________ As a result, we must look beyond the mere wording of the agreement. In this regard, Top of the Track directs that, to ________________ ascertain what was reasonable and intended, we look at the facts surrounding an agreement's making. Top of the Track, 654 A.2d at ________________ 1295-96. Viewing the facts in the best light for Hodgkins, the -11- general purpose of the IAW program agreement appears fairly straightforward. An employee suggestion plan such as the IAW program is intended to reward ideas and promote more active employee participation in the productive process. See Fish v. ___ ____ Ford Motor Co., 534 N.E.2d 911, 913 (Ohio Ct. App. 1987). These _______________ programs give employees incentives in the form of rewards to work harder and generate possible improvements. Id. At the same ___ time, the clauses in the employment contract and the proposal plan document must be upheld to protect the company's interests. Id. Among those interests is the ability of the employer to ___ quickly resolve instances where the suggestion involved may provide benefits that are difficult or impossible to quantify. We find that the district court properly concluded that no genuine issue of material fact existed to cast doubt on the proposition that, under Maine law, NET's promise was not illusory. Given the context of employee relations and incentives surrounding the IAW program, NET's promise was not rendered unenforceable by a grant of unfettered discretion. Even assuming, arguendo, that Hodgkins correctly argues that the IAW ________ program constitutes an agreement severable from his employment relationship with NET, we cannot accept Hodgkins' assertion that he provided NET with a suggestion in exchange for NET's promise that it would give him an award if it wished to, at its total discretion. Given its policies of generally informing its employees when one of them received an award, the context in which NET made its promise did not allow it to refuse to pay -12- awards arbitrarily at its discretion. If NET refused to pay awards, then the IAW program in the future would not provide incentives to employees to suggest improvements. Future improvements depended, and still depend, on current payment of awards.2 In sum, the lack of an explicit "reasonableness" provision alone does not render the IAW program contract unenforceable, and this factual background further justifies the district court's conclusion, especially in the absence of proffered contravening evidence by Hodgkins.  Like the district court before us, we believe that the Maine Law Court would conclude that the IAW program constituted a valid agreement between NET and Hodgkins. Before determining the precise contractual duty that NET faced, however, we must consider the alleged tender by DuBois of a $17,500 special award to Hodgkins. This is certainly a disputed issue of fact; the question is whether it represents a material dispute. Taken, in Hodgkins' favor, as true, this statement could not create any new obligation on the part of the company: the submitted idea was "past consideration" and thus insufficient to support a new  ____________________ 2 Perhaps NET could have quietly refused to pay higher awards and publicize smaller but still significant awards. However, Hodgkins has presented no evidence of such a NET policy sufficient for his summary judgment burden. While summary judgment is only appropriate when "there is no genuine issue as to any material fact and [] the moving party is entitled to a judgment as a matter of law," Fed. R. Civ. P. 56(c); Coll v. PB ____ __ Diagnostic Sys., Inc., 50 F.3d 1115, 1121 (1st Cir. 1995), the ______________________ nonmoving party "may not rest upon the mere allegations or denials of the . . . pleadings, but . . . must set forth specific facts showing that there is a genuine issue for trial," Fed. R. Civ. P. 56(e); Coll, 50 F.3d at 1121.  ____ -13- contract or a modification. See Greater Boston Cable Corp. v. ___ ___________________________ White Mountain Cable Constr. Co., 604 N.E.2d 1315, 1317 (Mass. _________________________________ 1992) (stating that "[p]ast consideration does not support a contract"); Hayes v. Plantations Steel Co., 438 A.2d 1091, 1093 _____ ______________________ (R.I. 1982) (concluding that because "[v]alid consideration . . . must be bargained for . . . [t]o be valid, therefore, the purported consideration must not have been delivered before a promise is executed, that is, given without reference to the promise"); 4 Richard A. Lord, Williston on Contracts 8:9, at ______________________ 193-202 (4th ed. 1992). However, we conclude that whether the agreement contained an implicit obligation of reasonable efforts, good faith, accurate evaluation of the idea's worth, or other such treatment, the alleged offer of $17,500 represents evidence from which a jury could infer that NET did not live up to its obligations when it later claimed that Hodgkins' idea did not merit more than the Initial Award. Having allegedly tendered a $17,500 Special Award, NET cannot avoid factfinding as to whether its subsequent refusal to pay any amount as a special award ___________ breached its duty regarding the Hodgkins idea. As a result, on the breach of contract claim, we must reverse the district court's grant of summary judgment, and remand for further proceedings in accord with this opinion. We leave it to the district court, in the first instance, to determine the precise contractual duty which arose under Maine law pursuant to the parties' agreement. -14- II. Unjust Enrichment and Quantum Meruit II. Unjust Enrichment and Quantum Meruit Hodgkins also seeks damages under unjust enrichment and quantum meruit theories. Under Maine law, "[u]njust enrichment describes recovery for the value of the benefit retained when there is no contractual relationship, but when, on the grounds of fairness and justice, the law compels performance of a legal and moral duty to pay," while "quantum meruit involves recovery for services or materials provided under an implied contract." Aladdin Elec. Assoc. v. Town of Old Orchard Beach, 645 A.2d 1142, ____________________ _________________________ 1145 (Me. 1994); see A.F.A.B., Inc. v. Town of Old Orchard Beach, ___ ______________ _________________________ 639 A.2d 103, 105 n.3 (Me. 1994). We have already discussed and upheld the district court's finding of an enforceable agreement between NET and Hodgkins. Without evidence of fraud, or other circumstances that render the contract inoperative, Hodgkins is foreclosed from seeking additional payment outside the contract terms. See Top ___ ___ of the Track, 654 A.2d at 1296 (contract between the parties _____________ forecloses unjust enrichment claim); Prest v. Inhabitants of _____ _______________ Farmington, 104 A. 521, 524 (1918) (valid express contract __________ forecloses a quantum meruit action). Because Hodgkins has put forth no such evidence, we agree with the district court that Hodgkins' unjust enrichment and quantum meruit claims must fail. III. Equitable Estoppel and Promissory Estoppel III. Equitable Estoppel and Promissory Estoppel Hodgkins also seeks damages under theories of equitable estoppel and promissory estoppel. Under Maine law, equitable estoppel "bars the assertion of the truth by one whose misleading -15- conduct has induced another to act to his detriment in reliance on what is untrue." See Anderson v. Commissioner of the Dep't of ___ ________ ____________________________ Human Servs., 489 A.2d 1094, 1099 (Me. 1985) (adding that "[a] _____________ misunderstanding will not support application of equitable estoppel"). According to Maine law on promissory estoppel, "[a] promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise." Martin v. Scott Paper Co., 511 A.2d 1048, 1050 (Me. ______ _______________ 1986). Hodgkins contends that, taken as a whole, the IAW program encouraged the submission of ideas and made specific representations to employees, including Hodgkins, about the evaluation process and the compensation to be paid for ideas that produced financial results. Hodgkins argues that under Maine's doctrine of equitable estoppel, NET's course of conduct precludes NET from asserting rights of contract against Hodgkins, since Hodgkins in good faith relied upon NET's conduct and was led thereby to change his position for the worse. See, e.g., ___ ____ Waterville Homes, Inc. v. Maine Dep't of Transp., 589 A.2d 455, ______________________ ______________________ 457 (Me. 1991). Citing Martin, 511 A.2d at 1050 (Me. 1986), ______ Hodgkins also argues that promissory estoppel similarly applies.  The district court found this argument unconvincing because it concluded that since the various IAW program publications made it clear that NET retained complete discretion -16- as to the evaluation methods and conclusions, it would have been unreasonable for Hodgkins to conclude that such publications promised him an award. Furthermore, the district court found that Hodgkins could not have reasonably relied on the NET employee newsletter of January 3, 1991, listing him as having submitted a winning idea, since: (1) Hodgkins knew that the announcement was made before his idea was even implemented, let alone evaluated after one year; (2) the newsletter reference to "15 percent of the estimated savings" is a clear reference to an "Initial Award for a tangible idea," not a "Special Merit Award"; and (3) the announcement's reference to a "Tangible Award" for Hodgkins clearly meant an Initial Award, since the IAW program rules and publications use the term "tangible" to describe "Initial Awards for tangible ideas," but not "Special Merit Awards." On appeal, Hodgkins attempts to sidestep the district court's analysis in two ways. First, he asserts that a factual question existed as to whether Hodgkins' reliance on NET's promise was reasonable, since he had used his experience projecting costs for NET to estimate the likely savings that NET would realize from implementing his idea. Second, Hodgkins contends that "taken as a whole," rather than looking at the IAW program publications and the NET newsletter in isolation, NET's conduct justifies both estoppel theories. We find the district court's analysis convincing nonetheless. With respect to his first assertion, regardless of -17- his assessment of likely savings from his idea, under an equitable estoppel theory Hodgkins was required to show he reasonably relied or that NET made statements which it should reasonably have expected to induce Hodgkins' actions. The argument that a factual question existed as to his estimates simply does not respond to the crux of the district court's analysis: that his reliance was not reasonable. With respect to Hodgkins' emphasis on the IAW program "taken as a whole" forming an issue of triable fact, that allegation by itself does not convert the issue into a question of fact for the jury. Because Hodgkins has failed in his brief to point to evidence other than that considered by the district court in assessing NET's conduct under equitable estoppel, we cannot determine what additional facts Hodgkins may be referring to by his invocation of a holistic approach. As a result of this failure to point to other competent evidence to surmount a supported summary judgment motion, see Thomas v. Metropolitan Life Ins. Co., 40 F.3d 505, ___ ______ ___________________________ 510 (1st Cir. 1994) (noting that "[t]o avoid summary judgment, a nonmoving party must be able to point to some specific, competent evidence in support of its claim"); Cloutier v. Town of Epping, ________ _______________ 714 F.2d 1184, 1192 (1st Cir. 1983) ("surmount[ing] a supported motion for summary judgment" requires that plaintiffs "set forth specific facts showing a triable issue"), we conclude that the IAW program publications and the NET newsletter compose the competent evidence regarding the relevant course of conduct for both estoppel theories. We agree with the district court's -18- discussion of this evidence, and find that, under an equitable estoppel theory, Hodgkins could not have reasonably relied on statements or conduct as evidenced in these sources. For the same reasons, under a promissory estoppel theory, NET should not reasonably have expected to induce Hodgkins' actions in reliance.3  ____________________ 3 Hodgkins' promissory estoppel argument was not a count in his complaint. Because it fails for the same reasons as his equitable estoppel claim, we do not address the issue of whether the district court erred in concluding that the promissory estoppel argument was waived. See Hodgkins v. New England Tel. & ___ ________ __________________ Tel. Co., slip op. at 8 n.2 (D. Me. 1994). ________ -19- IV. Negligent Misrepresentation IV. Negligent Misrepresentation Maine has adopted the Restatement (Second) of Torts definition of the tort of negligent misrepresentation, which runs as follows: One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information. Restatement (Second) of Torts 552(1) (1977), cited in Chapman _____________________________ _________ _______ v. Rideout, 568 A.2d 829, 830 (Me. 1990). _______ Hodgkins argued below that the newsletter announcement and IAW program publications contained false statements on which he justifiably relied in deciding when to retire. The district court was unconvinced by this argument. We agree with the district court's finding that Hodgkins' negligent misrepresentation claim must fail for the same reason as his estoppel arguments, namely, that specific statements in the IAW program publications and the NET newsletter, as well as the context in which they were read, clearly rendered Hodgkins' alleged reliance unreasonable. We note in passing that the only false statement Hodgkins has pointed to, the alleged statement by DuBois, taken as true, would still have been made after Hodgkins had already retired, and thus Hodgkins cannot claim to have relied upon it, nor does Hodgkins so claim. Hodgkins does not -20- point to evidence contradicting NET's statements in the IAW program publications and the NET newsletter that rendered justifiable any reliance on those materials in his retirement and related decisions. Because Hodgkins must show justifiable reliance in order to sustain a negligent misrepresentation claim, he consequently cannot establish that a genuine issue of material fact remains that would compel us to grant him a trial under a Maine law theory of negligent misrepresentation. CONCLUSION CONCLUSION For the foregoing reasons, the judgment of the district court is reversed in part, affirmed in part, and remanded for reversed in part affirmed in part and remanded for _________________ ________________ ________ further proceedings. further proceedings  -21-